**STANDARD ADVERTISING AGENCY, INC., Plaintiff/Appellant,**

v.

**Donald W. JACKSON, Commissioner of Revenue of the State of Tennessee, Defendant/Appellee.**

Supreme Court of Tennessee, at Nashville.

Aug. 10, 1987.

Charles A. Trost, William H. Neely, Waller Lansden Dortch & Davis, Nashville, for plaintiff/appellant.

W.J. Michael Cody, Atty. Gen. and Reporter, Joe C. Peel, Asst. Atty. Gen., Nashville, for defendant/appellee.

OPINION

HARBISON, Justice.

The taxpayer appeals from the dismissal of its suit for the refund of sales taxes, penalties and interest. After review of the issues presented and the entire record, we affirm the decision of the Chancellor.

The facts were stipulated. The appellant corporation was formed in 1977 as a wholly-owned subsidiary of Service Merchandise Company, Inc., a large retail and mail order mercantile establishment. Service Merchandise formed several other wholly-owned subsidiaries through which part of its merchandising operations were conducted.

Appellant was formed as an advertising agency to service the advertising department of Service Merchandise and at least some of the advertising needs of the other subsidiaries. Appellant had no separate employees, and all of its operations were conducted through personnel of the Service Merchandise advertising department. There is no question, however, but that appellant had a separate corporate existence, filed separate franchise and excise tax returns, maintained its own bank accounts and existed in corporate form apart from its parent and related corporations.

Appellant was formed for the purpose of arranging for the production of television and radio commercials by various radio and television production companies. The reason for its formation was that these media paid to advertising agencies commissions of fifteen percent of their total charges. It was stipulated that appellant met the industry criteria for an advertising agency, in that it had at least three clients, was financially able to pay for the advertising time purchased and that it was generally responsible for the development of commercials for its clients. Apparently appellant had a small number of other clients in addition to its parent and affiliated corporations. More than eighty-five percent of the total revenues of the appellant corporation came from media commissions on business which it placed for the Service Merchandise group.

Orders for commercials and other advertising materials were placed in the corporate name of appellant with various media, and billings were generally made by the media to the appellant, although in a few instances the billings were sent to the par-

ent. The parent was then invoiced by appellant on invoices, many of them handwritten, in which appellant made charges for commercial tapes and other advertising materials "sold to" Service Merchandise or to an affiliate. The parent or affiliate would pay to appellant one-hundred percent of the charges. Appellant would receive a fifteen percent commission from the production company or other television or radio firm by remitting eighty-five percent of their gross billings to it.

Appellant never registered with the Tennessee Sales and Use Tax Division of the Department of Revenue, and it paid no sales taxes on the amount of its billings to its parent and affiliate. Because television and radio media are not generally subject to the sales and use tax for advertising services, neither the appellant nor any other members of the corporate group paid any sales tax upon the large amount of media advertising acquired during the audit period. In a few instances the vendors' invoices did include a charge for sales tax, and in such instances the tax was paid by appellant along with payment for the invoiced product. Appellant has received credit for any such sales taxes paid by it during the years at issue.

Appellee has imposed a tax upon the transactions between appellant and its parent or affiliated corporations. The theory of appellee is that activities of appellant resulted in the development, creation and sale of completed audio and video cassette tapes and recordings to be used by the parent and other members of the corporate group as promotional and advertising material for electronic broadcast media.

In light of the decision of this Court in *Thomas Nelson, Inc. v. Olsen*, 723 S.W.2d 621 (Tenn.1987), appellant concedes that the completed video tape cassettes which are the subject of the transactions involved constitute tangible personal property within the meaning of the Retail Sales Act. Earlier in the litigation appellant had contended otherwise.

It contends, however, that the transfers involved were not "sales" in that it was acting only as the agent for its parent or affiliates in procuring the various advertising materials, so that the retail sale occurred from the various vendors to the parent or to the particular affiliate involved.

The stipulation of facts and the exhibits attached thereto do not bear out this contention. It is true, as pointed out by appellant, that in many instances the relationship between a commercial advertising agency and the advertiser is that of principal and agent. *See generally, Jahn v. McKee Baking Company*, 629 S.W.2d 689 (Tenn.App.1981). That case, however, involved the liability of the advertiser to the vendors, and is not dispositive of the situation presented here.

The documentary evidence attached to the stipulation, in the form of numerous invoices between appellant and its related corporations, make it clear that appellant billed its customers for merchandise "sold to" the customer by appellant. The books and records were kept in this way in the ordinary course of business. Appellant received no commissions from its customers, which it claims were its principals. Its commissions were derived entirely from the third party vendors. These vendors sent to appellant invoices showing the "gross" and the "net" amounts to be paid to them, the differential being fifteen percent. Appellant collected the gross amount from its parent or affiliates and remitted the net amount, so that, in effect, it was being paid by the vendors and not by the advertiser.

This, alone, does not necessarily mean that appellant was not the agent of other members of the corporate group for certain purposes. For purposes of the sales tax, however, the record supports the conclusion of the Chancellor that appellant made retail sales to its parent and related corporations, and that it is liable for the taxes assessed.

Appellant does not contend that transactions between related corporations are exempt from the sales and use tax. Affiliate and subsidiary corporations are created by their parents for legitimate business and commercial purposes. Appellant was created in order to enable the corporate group

to recoup the fifteen percent commissions paid by the recording studios and other vendors. It served a legitimate and profitable commercial purpose, but the form of its transactions with the studios and with its customers was such that it was engaged in the making of sales of tangible personal property and not acting merely in a representative capacity for the other corporations.

Form and structure are quite significant in business and commercial transactions, and frequently the form or structure used has controlling significance for taxes and other purposes.

In the case of *Widdicombe v. McGuire*, 221 Tenn. 601, 607, 429 S.W.2d 815, 817–818 (1968), the Court said:

"It is stated in the briefs that Brown 'did business' in the corporate form of Central Towers Apartments, Inc., for some years, but this statement is inaccurate in legal theory. The corporation had a separate legal existence apart from Brown. There is shown no basis upon which we would be justified in saying that throughout all of the multiple transactions reflected in this record the corporation was a mere shell or sham, whose existence should be disregarded. We think that the following statement by the United States Supreme Court is appropriate:

'While corporate entities may be disregarded where they are made the implement for avoiding a clear legislative purpose, they will not be disregarded where those in control have deliberately adopted the corporate form in order to secure its advantages and where no violence to the legislative purpose is done by treating the corporate entity as a separate legal person. (citation omitted)' "

Even though it had no separate employees, appellant was created as a separate and distinct corporation which was qualified as an advertising agency in accordance with media standards. One of the consequences of the form and structure used for its transactions was sales tax liability. Since it neither registered with the Depart-ment nor paid the taxes due, it has incurred the resulting liability.

Like the Chancellor we find no basis for waiver of the penalties incident to the tax liability of appellant. The judgment of the Chancellor is affirmed at the cost of appellant and the cause is remanded to the trial court for any further proceedings which may be necessary.

BROCK, C.J., and FONES, COOPER and DROWOTA, JJ., concur.